IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| BUTLER COUNTY AIRPORT AUTHORITY, | ) | CIVIL DIVISION |
| a Municipal Authority, | ) | |
| Plaintiff, | ) | CASE NO.: _____ _____ |
| V. | ) | |
| | ) | |
| MICHAEL JOSEPH INTERTHAL, ROBERT | ) | |
| JAMES ASHCRAFT, JR. and CYNTHIA LOUISE | ) | |
| ASHCRAFT, husband and wife, JEFFREY G. | ) | |
| SERUSET, and  THOMAS CASSETTA, and THE | ) | |
| KUSHNER FAMILY PROTECTOR TRUST, | ) | |
| Dated 9/25/2012, Raymond D. Kushner and Denise | ) | |
| F. Kushner, Grantors and/or Trustees, | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

AND NOW, comes the Plaintiff, BUTLER COUNTY AIRPORT AUTHORITY, a

Municipal Authority, by and through its attorneys, MICHAEL J. PAWK, ESQUIRE, and

REBECCA L. BLACK, ESQUIRE, and LUTZ & PAWK, and in support of the within

COMPLAINT respectfully avers as follows:

### I.     PARTIES

1.     Plaintiff, Butler County Airport Authority (hereinafter referred to as "Airport"), is

a Pennsylvania Municipal Authority, having its principal place of business at 475 Airport Road,

Butler, Pennsylvania 16002.

2.     Defendant, Michael Joseph Interthal, is an adult individual, with a mailing address

of 700 Three Degree Road, Butler, Pennsylvania, 16002.

3.      Defendants, Robert James Ashcraft, Jr. and Cynthia Louise Ashcraft, husband and wife, have a property mailing address of 704 Three Degree Road, Butler, Pennsylvania, 16002.

4.      Defendant, Jeffrey G. Seruset, is an adult individual with a property mailing address of 708 Three Degree Road, Butler, Pennsylvania, 16002.

5.      Defendant, Thomas Cassetta, is an adult individual with a property mailing address of 706 Three Degree Road, Butler, Pennsylvania, 16002.

6.      Defendant, The Kushner Family Protector Trust, Dated 9/25/2012, Raymond D. Kushner and Denise F. Kushner, Grantors and/or Trustees, maintains a property mailing address of 620 Three Degree Road, Butler, Pennsylvania, 16002.

## II.      JURISDICTION, AND VENUE

7.      The matter is a Declaratory Judgment action, pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      This Court has jurisdiction to hear and decide this matter, based upon 28 U.S.C. § 1331, as this case involves the interpretation and application of a Federal law.

9.      Venue is appropriate in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391, as all Defendants reside in the Western District of Pennsylvania and the Plaintiff is a municipal authority with a principal address of 475 Airport Road, Butler, Pennsylvania 16002.

10.     Additionally, all events, with the exception of the passage of federal law, occurred in Butler County, Pennsylvania, which is also the location of the real property underlying the dispute.

11.     An actual case and controversy of a justiciable nature exists between Plaintiff and Defendants involving the rights and obligations of those parties under a State Court Consent Order which stands in conflict with provisions of a Federal Law.

12.     Furthermore, the Federal Aviation Administration has begun withholding funding from Plaintiff, Airport Authority, as a result of the referenced State Court Consent Order, necessitating prompt resolution.

## III.     FACTS

### a.  CONSENT ORDER

13.     The Butler County Airport Authority (hereinafter "Authority") and Defendants or Defendants' predecessors in title, in addition to one resident who has signed the required Agreement and is therefore not a party hereto, were involved in litigation in 1992 concerning an easement to use a 50-foot wide taxiway.

14.     Defendants are residents with property located on the Eastern end of the Butler County Airport Property, and abutting the same.

15.     At the same time, the original owner of Defendants' parcels provided the individual lots with rights to use a 50-foot strip of land as a taxiway for the residents to use as a means to access the airport and runway.

16.     Litigation concerning the enforcement of the deeded easements was instituted by Defendants, or Respondent's predecessors in title, in 1990, in the Butler County Court of Common Pleas.

3

17.     On February 18, 1992, the parties entered into a Consent Order, intended to settle all issues presented through the litigation. A true and correct copy of the Consent Order is attached hereto as Exhibit "A."

18.     As part of the Consent Order, the Authority agreed that "no license, fee, permit, or other device shall ever be required by [the Authority] or imposed on [Plaintiffs], their successors or assigns, pertaining to their rights [to utilize the Airport runway]." Consent Order, ¶ 2.

19.     Thereafter, there was additional litigation amongst the Parties with regard to the installation of a fence and gate, which resulted in the issuance of a decision by the Pennsylvania Superior Court, at 2000 Pa. Super. 386 (Pa. Super 2000), but is unrelated to the issue herein, except that the Court required the Authority to construct a specific gate in enforcing the Consent Order.

## b.   FAA MODERNIZATION AND REFORM ACT

20.     In 2011 and 2012, a series of changes was enacted by the Federal Aviation Administration (hereinafter "FAA") to what are called "Through-the-Fence" (hereinafter "TTF") Agreements, concerning access to Airport property from off-airport property.

21.     On April 26, 2011, the Authority received a letter from the Pennsylvania Department of Transportation, notifying it of the FAA's interim TTF policy and stating that "the interim policy requires sponsors with existing arrangements to adopt measures to substantially mitigate existing and potential problems to enhance safety." A true and correct copy of the referenced letter is attached hereto as Exhibit "B."

4

22.     In February of 2012, Congress passed the FAA Modernization and Reform Act of 2012 ("FMRA").

23.     In August of 2013, the Authority again received correspondence from the Pennsylvania Department of Transportation, notifying the Authority of the FAA TTF policy and the changes that must be made to comply with the same. A true and correct copy of the referenced letter is attached hereto as Exhibit "C."

24.     Section 136 of the FMRA allows General Aviation Airports to enter into or extend residential through-the-fence agreements with property owners only under specified conditions. 77 Fed.Reg. 44516; 112 P.L. 95, 126 Stat. 11.

25.     Under Section 136, subsection (a)(2), General Aviation Airports desiring to enter into or extend the TTF Agreements are required to satisfy the following:

        a.   The property owner must pay access charges determined to be comparable to fees charged to Airport tenants for similar use of the Airport;

        b.   The property owner must bear the cost of building and maintaining any infrastructure necessary to provide access from the residence to the Airport;

        c.   The property owner must maintain the property for residential use only;

        d.   The property owner must prohibit access from other properties to the Airport; and

        e.   The property owner must prohibit any aircraft refueling from occurring on the property.

        78 Fed.Reg. 42419-20; 112 P.L. 95 § 136(a)(2), 126 Stat. 11.

26.     Section 136, subsection (a)(1), provides that a general aviation airport will not be considered to be in violation of this law or any grant assurance made under this section, or any

other provision of law as a condition for the receipt of federal financial assistance for airport development" solely because the Airport has entered a TTF Agreement, so long as the Agreement complies with paragraph (a)(2)(i)-(v).

27.     That is, without complying with subsection (a)(2) requirements, the Authority would stand in violation of Federal Law and be prohibited from receiving federal funding or grants. 112 P.a. 95 §136 (a)(1).

28.     Compliance Guidance Letter 2013-01 was issued by the FAA on July 16, 2013, through which General Aviation Airports with existing TTF Agreements were given a deadline of October 1, 2013, to establish that their agreements met the standards set forth in Section 136.

29.     The FAA requirements enumerated in 112 P.L. 95 § 136(a)(2) render compliance with the Consent Order.

30.     The Authority has engaged in several conferences and meetings with the FAA and Defendants to determine whether an agreement could be reached, but to no avail.

31.     The fee that would be required to be paid by Defendants, under 112 P.L. 95 § 136(a)(2)(i) would be $36.75 per month, for only five months per year, for a total of $183.75 per year.

32.     Additionally, the Authority had previously installed the gate, paying for the construction and maintenance thereof, in accordance with the Consent Order and Superior Court decision requiring the same under the terms of the contract.

33.     Although the Airport has worked diligently to negotiate the terms of the required agreement to the satisfaction of Defendants, Defendants have adamantly refused to execute any agreement imposing a fee for access to the Airport, no matter how nominal, and thus remain unwilling to execute the required TTF Agreements.

34.     As a result of Defendants' unwillingness to execute the required Agreements, the Authority stands in violation of Federal Law, and is ineligible for allocations from the Federal Government.

35.     In fact, the Authority has not received the anticipated tentative allocations for the current year as a result.

36.     If the Authority does not come into compliance with the FAA requirements, the Authority will remain in violation of the Federal Law and without federal funding.

37.     Without federal funding, the Airport will cease to exist.

## IV.     ACTION FOR DECLARATORY JUDGMENT

38.     Plaintiff hereby incorporates Paragraphs 1 through 39 as though fully set forth herein.

39.     In accordance with the Declaratory Judgments Act (28 USCS §2201 et. seq.), in cases of actual controversy within its jurisdiction, and upon the filing of appropriate pleadings, any court of the United States may decide and declare the legal rights of an interested party.

40.     In this action, Plaintiff is seeking a Declaratory Judgment that compliance with the 1992 State Court Consent Order, as to the named Defendants only, is both impossible and inequitable, in light of the Federal Legislation concerning the same.

41.     The Defendants have made clear, both orally and in writing, that they intend to proceed with legal action, should the Authority block their access, and the FAA has made clear, both orally and in writing, that the Airport will not receive Federal funding without having the required Agreements in place; thus, an actual case or controversy exists between the parties and this Court can and should exercise jurisdiction over this dispute and resolve the continuing

uncertainty.

42.     The Restatement of Contracts provides that, "[i]f the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made." Rest. 2d of Contracts, § 264 (2nd 1981).

43.     Thus, in this instance, the FMRA was an event the non-occurrence of which was a basic assumption upon which the contract was made. Id.

44.     Additionally, "[w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." Rest. 2d of Contracts, § 265 (2nd 1981).

45.     As an equitable matter, Plaintiff desires to seek a determination of its rights prior to breaching the contract and coming before the Court as a Defendant in a Contempt proceeding.

46.     Entry of a Declaratory Judgment stating that Plaintiff's compliance with the 1992 Consent Order is both impossible and inequitable will satisfy the Declaratory Judgment Act by, among other things, resolving uncertainty with regard to the legal rights of Plaintiff and Defendants, and will promptly determine outstanding legal issues.    Further, a Judicial Declaration at this time may prevent unnecessary expenditure of funds and additional litigation.

        WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a Declaratory Judgment adjudicating the rights, duties, and responsibilities of the parties, and determine that Plaintiff is unable to comply with the 1992 Consent Order as to the named Defendants, and that

ordering compliance with the same would be impossible and inequitable, in that Plaintiff would

no longer receive Federal grants and would, thus, cease existence as an Airport. Additionally, the

Plaintiff seeks an Order declaring that the 1992 Consent Order is unenforceable as to the named-

Defendants.

*Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.*

Respectfully submitted
this __/9th__ day of April, 2016,

LUTZ & PAWK

*Rebecca S Black*

MICHAEL J. PAWK, ESQUIRE
PA 54413
MikePawk@zoominternet.net

REBECCA L. BLACK, ESQUIRE
PA 309127
RebeccaBlack@zoominternet.net

THE MORGAN CENTER BUILDING
101 E. DIAMOND STREET, SUITE 102
BUTLER, PA  16001
TELEPHONE (724) 285-3400

## VERIFICATION

I, Harry Boben, in my capacity as Chairman of the Board of the Butler County Airport Authority, and being authorized to do so, hereby verify that the statements contained in the foregoing **COMPLAINT** are true and correct to the best of my knowledge, information and belief.

The Butler County Airport Authority:

BY:  Harry Boben, Chairman